685 So.2d 20 (1996)
Ricardo BATISTA, Appellant,
v.
The STATE of Florida, Appellee.
No. 95-3577.
District Court of Appeal of Florida, Third District.
November 20, 1996.
Rehearing Denied January 15, 1997.
*21 Maria Brea Lipinski and John H. Lipinski, Hollywood, for appellant.
Robert A. Butterworth, Attorney General, and Keith S. Kromash, Assistant Attorney General, for appellee.
Before COPE, LEVY and SHEVIN, JJ.
COPE, Judge.
Ricardo Batista appeals his conviction for burglary with an assault or battery. We affirm.
Defendant argues that the trial court should have granted a mistrial based on an objected-to comment which the prosecution made in closing argument. Defendant contends that the prosecution argument was an impermissible comment on silence. We disagree.
The two crime victims in this case returned to their townhouse, unlocked the door, and walked inside. There they found the defendant who rushed past them, striking one of them. The testimony was that the defendant said nothing to the crime victims as he pushed past them. The victims gave chase, caught the defendant, and held him for the police. Defendant gave a post-Miranda[1] statement in which he said that the whole incident was a misunderstanding and denied having been in the townhouse.
Upon returning to the townhouse, it was found that portions of the residence had been ransacked, some of the belongings had been *22 moved, and electronic equipment had been unplugged. The victims testified that the townhouse had been securely locked when they left earlier in the day. The prosecution theory was that defendant had picked the lock, relocked the door once inside, and had begun ransacking the townhouse when the victims returned unexpectedly.
At trial the defendant did not testify but called his niece to the stand as a defense witness. The niece claimed that she and the defendant had been looking for a place for the niece to live, and had walked into the victims' townhouse, believing that it was the office. She testified that the townhouse was open and that the two victims then entered and began an altercation.
In closing argument the prosecutor commented on the defense theory that the incident was all a misunderstanding. The prosecutor stated:
The fact that he comes running out of there and hits [the victim]. Hello. What are you doing? If you are just in there and just hanging out or in there by mistake what are you going to do?
Hey, man, I am sorry. I didn't know this was your apartment. I thought it was a leasing office.
No, don't let them fool you.... People don't bolt at somebody if they have nothing to hide.
And then afterlet's say he accidentally ran into this guy. You get up and you say, oh, shoot, it was an accident. What do you do? Do you keep on running?
There was no testimony that he said, hey, I am sorry. Boy, it was an accident. I was just running out of here.
[DEFENSE COUNSEL]: May I object and come side-bar?
THE COURT: No.
[DEFENSE COUNSEL]: May I reserve a right to make a motion?
THE COURT: Yes.
[PROSECUTOR]: What this man did was leave because he was trying to commit a theft. He was caught in the act. He was caught red-handed. He was not able to complete the crime.
At the end of the closing argument, defense counsel moved for a mistrial, contending that the prosecutor's argument was a comment on defendant's right to remain silent. By this defense counsel evidently claimed that the prosecutor had commented on defendant's failure to testify at trial.
When interpreted in the context of this evidentiary record, we think the prosecution argument was a fair comment on the evidence adduced at trial, and could not be reasonably understood as a comment on defendant's failure to testify. In this case both crime victims testified that the defendant had rushed past them, striking one of the victims as he fled the house. There was specific testimony that the defendant said nothing to the victims when he did this. The prosecutor was certainly allowed to argue that if this truly had been a misunderstanding, rather than a burglary, the defendant would have apologized or given some appropriate explanation to the victims instead of assaulting them. We do not think that the prosecutor's argument can be reasonably viewed as a comment on silence. See State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
Defendant next challenges the sufficiency of the court's factual findings which determine that he is a habitual offender. At the sentencing hearing, the court stated:
[THE COURT:] The State has filed their Notice of Enhancement and has proven to the Court that Mr. Batista qualified to be sentenced as a Habitual Offender pursuant to Florida Statute 775.084. Certified copies of his priors have been introduced and testified to by the fingerprint person, who compared those prior fingerprints with the standards he took here in court the last time we were present.
. . . .
The Court is going to find that Mr. Batista is a Habitual Offender, pursuant to 775.084....
Defendant is correct that the court did not make the detailed findings contemplated by paragraph 775.084(1)(a), Florida *23 Statutes (1993).[2] The failure to make the detailed findings is, however, subject to harmless error analysis. Herrington v. State, 643 So.2d 1078, 1079-80 (Fla.1994).
Here the defense objected that since defendant's prior convictions were from other counties, and the fingerprint technician had been given copies rather than the originals to examine, the copies were too indistinct to make a comparison. However, the fingerprint technician testified that the copies were sufficiently legible to allow the comparison, and the trial court made a specific finding on fingerprint comparison, quoted above.
The defense also objected that some of the convictions relied on by the state occurred more than five years prior to the date of the 1995 current offense. See § 775.084(1)(a)2, Fla.Stat. (1993). However, certified copies of other convictions were introduced into evidence and plainly reveal that defendant has the necessary qualifying convictions required by the statute. Even though the trial court should have made findings on each of the statutory elements contained in paragraph 775.084(1)(a), the facts regarding the prior convictions "are easily discernible from the record and allow meaningful appellate review." Herrington v. State, 643 So.2d at 1080 (footnote omitted). The habitual offender adjudication is affirmed.
Finally, defendant argues that he was subjected to vindictive sentencing because the trial court imposed a sentence of thirty years as a habitual offender, which greatly exceeded the court's pretrial offer of seven years straight time or five years as an ordinary habitual offender. Defendant claims that reversal is required by this court's decision in Stephney v. State, 564 So.2d 1246 (Fla. 3d DCA 1990). In Stephney, however, the trial court made statements on the record which were held to show retaliation because the defendant had turned down the court's original plea offer. Id. at 1247-48. In addition, after the defendant was convicted, defendant asked for a drug evaluation, which the court refused. Id. at 1248. The court also did not obtain a presentence investigation. The defendant was sentenced to the highest permissible level under the sentencing guidelines. Id. This court concluded that (1) "a review of the trial judge's comments on their face support a presumption of judicial vindictiveness," id. and (2) the record otherwise "fails to reveal any reason why the harshest possible sentence was rendered." Based on that record, this court reasoned, "The only conclusion which can be drawn is that the longer sentence was entered due to the defendant's failure to accept the plea bargain offered by the trial judge." Id.
None of the Stephney factors is involved in this case. The trial judge's remarks in this case were very evenhanded, and in no way resemble those in Stephney. Further, after defendant was convicted the court ordered a drug evaluation which had been requested by the defense. The court also ordered a presentence investigation. The presentence investigation outlined defendant's criminal history and recommended that defendant be sentenced to the maximum allowed under the guidelines or, if habitualized, then thirty years as a habitual offender. The court also heard statements from the defendant, his family, and others. The court then imposed a thirty-year habitual offender sentence, which was one of the options recommended by the presentence investigation. The Stephney decision is not applicable here.
Affirmed.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] The date of the crime was January 7, 1995.