847 So.2d 610 (2003)
Brian J. VONDERVOR, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-1907.
District Court of Appeal of Florida, Fifth District.
June 20, 2003.
*611 James B. Gibson, Public Defender, and Scott Ragan, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Belle B. Schumann, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, J.
Brian J. Vondervor ["Vondervor"] appeals an order revoking his probation and resentencing him after the violation. We affirm.
Vondervor pled nolo contendere to one count of the sale of methamphetamine, one count of possession of methamphetamine, two counts of sale of marijuana, and two counts of possession of marijuana. In exchange for the plea, he was sentenced to five years of drug offender probation, with the special condition that he serve eleven months and twenty-nine days in the county jail on counts IV and VI.
After his release, Vondervor was charged with violation of his probation due to the failure to pay the cost of supervision, as well as a number of fines, fees and costs. He was resentenced to a new four-year term of drug offender probation on February 25, 2002.
On April 9, 2002, Vondervor was again charged with violation of his probation. This time the charges concerned the failure to submit a written report to his probation officer on or before March 5, 2002, and the failure to comply with instructions given to him by his supervising officer.[1] The violation report explained that after Vondervor had been resentenced to probation on February 25, 2002, he had reported to the probation office, but had been unable to give an address to the officer of the day. The report stated that the officer of the day had told Vondervor to contact his probation officer, Robert Thompson ["Thompson"], the following day and give an address, but Vondervor never contacted his probation officer and his whereabouts were unknown. Further, he had never *612 filed the written report for the period ending March 5, 2002.
A hearing on the alleged violations was held on June 3, 2002. Before the hearing commenced, the court asked for a recommendation from the State if the violations were admitted. The State proposed that Vondervor be sentenced to a residential drug treatment facility, and held in custody until a placement can be made. The court indicated that it would sentence Vondervor in accordance with the State's proposal, but it was rejected by Vondervor.
Thompson testified that Vondervor had violated the conditions of his probation by failing to comply with instructions he had been given. The instructions were to contact Thompson on February 26, 2002 with his address. Vondervor also failed to file a monthly written report by March 5, 2002. Thompson said that Vondervor did not contact him until April 8, 2002, when he came into the office. By this time, the affidavit of violation had already been filed. Even then, Vondervor gave Thompson his brother's address. Thompson told him he needed more than his brother's address, since he did not think he was actually staying there.
Vondervor testified that he was released from jail on February 25, 2002. He admitted that he went to the probation office and talked to Thompson, who told him to call his probation officer the following day. He said the next day he was just "busy," working with his brother and trying to get his life straight. He knows he should have called, but he had no residence at the time. Instead, he was living with his brother and various people in Crystal River, "switching on and off." Vondervor claimed that he reported to the probation office on March 7, 2002, and filled out a written report. He gave it "to the lady up front." He also reported in April. He was working on getting a residence. He has been taking urine screens for several years, and none of them have come back positive.
At the conclusion of the testimony, the court found that Vondervor had willfully violated his probation both by failing to file his March report and by failing to give his address to his probation officer. Vondervor was resentenced to five years' imprisonment on each of the four felony counts, with all sentences to run concurrently. He was sentenced to time served on the two misdemeanor possession counts. A corrected sentence was issued on July 19, 2002, sentencing him to five years in the DOC on count I, and no sentence on the remaining counts.
Vondervor appealed. While the appeal was pending, he filed a rule 3.800(b) motion to correct his sentence, arguing that his sentence was the result of vindictiveness and improperly took into account his refusal to accept the plea offer made by the State. The trial court denied the motion in a lengthy written order, in which the court reviewed the history of Vondervor's case and the evidence presented at the violation hearing. The court rejected the notion that Vondervor's sentence was the product of vindictive sentencing, explaining:
Once the defendant declined to admit the violation and requested a hearing, it was inevitable that the judge would be apprised of facts or circumstances that would impact the determination of an appropriate sentence.
In view of the facts established at the violation hearing; that the defendant had previously violated probation; that he had completely failed to contact his probation officer from February 26th until April 8, 2002; that he had failed to provide an address where he was living during this time; and that he had could [sic] not explain his conduct other than to say he "was busy"; it appears that *613 the bald allegation that judicial vindictiveness was the basis for the defendant's sentence is baseless. See, Eltaher v. State, 777 So.2d 1203 (Fla. 4th DCA 2001).
Vondervor first argues that the State failed to meet its burden of proving by the greater weight of the evidence that he violated probation. We find this argument to be without merit. The evidence is sufficient to support the conclusion that Vondervor violated his probation.
Vondervor next complains that the sentence imposed by the trial court was legally vindictive, because the trial court gave him five years in prison after he insisted on going to trial on his probation violation. He asserts that the judge offered him residential drug treatment if he pled to the violations. He maintains that his more severe sentencing after a trial demonstrates judicial vindictiveness.
Until recently, Florida courts appeared to be split on the question of whether the presumption of vindictiveness established in North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) applies when a defendant rejects a plea offer or has a plea set aside and subsequently receives a greater sentence after going to trial. The majority of courts, including this court, applied such a presumption where the judge became involved in plea negotiations, which were then rejected by a defendant, who subsequently went to trial and was sentenced to a harsher sentence. See Prado v. State, 816 So.2d 1155, 1157 (Fla. 3d DCA 2002) (presumption recognized), review granted, Case No. SC02-1124 (Fla. May 15, 2002); Byrd v. State, 794 So.2d 671 (Fla. 5th DCA 2001) (presumption recognized), review granted, 817 So.2d 850 (Fla.2002); McDonald v. State, 751 So.2d 56, 59 (Fla. 2d DCA 1999) (presumption recognized). By contrast, the Fourth District found that a lesser sentence could be offered as part of a plea, and no presumption of vindictiveness should be applied where the defendant receives a greater sentence after going to trial. See Morales v. State, 819 So.2d 831 (Fla. 4th DCA 2002), review granted, Case No. SC02-1152 (Fla. May 20, 2002).
The issue has now been addressed by the Supreme Court of Florida and decided by a divided vote. In Wilson v. State, 845 So.2d 142 (Fla.2003), the court detailed the circumstances in which a presumption of vindictiveness should be applied where a defendant receives a higher sentence after plea negotiations, as well as the interrelationship of the presumption with the judge's limited right to participate in plea negotiations as outlined in State v. Warner, 762 So.2d 507 (Fla.2000). In Warner, the court recognized certain limits on judicial participation in the plea bargaining process. The first was that the trial court could not initiate the plea dialogue. The second was that the judge must "neither state nor imply alternative sentencing possibilities which hinge upon future procedural choices, such as the exercise of a defendant's right to trial." Wilson, 845 So.2d at 146, quoting Warner, 762 So.2d at 513-514. According to Wilson, the opinion "involved a very narrow holding that permits a trial judge to respond to a request from a defendant as to what sentence the judge would impose in exchange for a guilty plea." Wilson, 845 So.2d at 152.
Wilson refused to adopt a presumption of vindictiveness to be applied in every case in which the judge participated in plea negotiations. Wilson, 845 So.2d at 150. Instead, it "conclude[d] that a totality of the circumstances review ... is the more appropriate analysis to employ to determine whether a defendant's constitutional right to due process of law was violated by the imposition of an increased sentence after unsuccessful plea discussions *614 in which the trial judge participated." Wilson, 845 So.2d at 156.
In this case there is no basis for imposition of a presumption of vindictiveness. First, no violation of Warner appears to exist. A plea offer was made by the State and simply agreed to by the trial judge, who did not insinuate himself into the bargaining process or depart from his role as an impartial arbiter. Although the judge did ask at the outset of the plea hearing for a recommendation from the State if the violation were admitted, this does not appear to be a violation of Warner. Prior to trial, a judge may ask the attorneys if a plea offer has been extended, and may ask the defendant if he is aware of a pending plea offer without violating Warner's restrictions. See Wilson, 845 So.2d at 157 n. 9 The judge can even tell the defendant at the same time of his or her maximum exposure if convicted at trial. Id. Furthermore, once the issue of vindictiveness was raised by Vondervor, the judge explained in detail the reasons why he imposed a harsher sentence.
AFFIRMED.
SHARP, W., and PALMER, JJ., concur.
NOTES
[1] The written conditions stated:

CONDITION (1): Not later than the fifth day of each month, or as otherwise directed, you will submit a full and truthful report to your supervising officer on the Written Monthly Report Form.
CONDITION (8): You will promptly and truthfully answer all inquiries directed to you by your Supervising Officer, and allow the Officer to visit in your home, at your employment site or elsewhere, and you will comply with all instructions he may give you.